David S. Markun (SBN 108067)
dmarkun@mzclaw.com
MARKUN ZUSMAN & COMPTON LLP
17383 West Sunset Boulevard, Suite A380
Pacific Palisades, CA 90272
Tel: (310) 454-5900
Fax: (310) 454-5970

Edward S. Zusman (SBN 154366)
ezusman@mzclaw.com
Kevin K. Eng (SBN 209036)
keng@mzclaw.com
MARKUN ZUSMAN & COMPTON LLP
465 California Street, 5th Floor
San Francisco, CA 94104
Tel: (415) 438-4515
Fax: (415) 434-4505

Attorneys for Plaintiff Pamela Phillips

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION – SANTA ANA**

PAMELA PHILLIPS, on behalf of herself and those similarly situated,

Plaintiff,

v.

ACCREDITED HOME LENDERS HOLDING COMPANY, and ACCREDITED HOME LENDERS, INC. d/b/a HOME FUNDS DIRECT,

Defendants.

Case No.: SACV 06-0057 CJC (RNBx)

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Hearing Date: February 25, 2008
Time: 1:30 p.m.
Courtroom: 9B
Judge: Hon. Cormac J. Carney

Complaint Date: November 1, 2005

///

///

///

///

///

PLEASE TAKE NOTICE that on February 25, 2008, at 1:30 p.m., in Courtroom 9B of the above captioned court, before the Honorable Cormac J. Carney, Plaintiff Pamela Phillips will move for an order granting preliminary approval of a settlement agreement entered into by the parties. Defendants do not oppose this Motion. The Unopposed Motion shall be based on this notice of motion and motion, the accompanying memorandum of points and authorities, and the supporting Declaration of Edward S. Zusman, including the attachments thereto.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place in the course of numerous settlement discussions beginning in March 2007, when the parties participated in a mediation, and continued throughout the remainder of 2007 during the Parties' further settlement negotiations.

Dated: January 30, 2008

/s/ Kevin K. Eng
David S. Markun
Edward S. Zusman
Kevin K. Eng
MARKUN ZUSMAN & COMPTON LLP

Attorneys for Plaintiff Pamela Phillips

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. BRIEF STATEMENT OF CASE ........ 1
  A. Nature of the Claims ........ 1
  B. Procedural History ........ 2
III. THE TERMS OF THE SETTLEMENT ........ 2
IV. ARGUMENT ........ 3
  A. Legal Standard ........ 3
  B. The Class Certification Hurdle Has Already Been Cleared ........ 5
  C. The Settlement Meets The Standards For Preliminary Approval ........ 5
    1. The Settlement Is “Fair, Adequate, and Reasonable” ........ 5
    2. The Indicia Of Arm’s-Length Negotiations and Lack of Obvious Deficiencies Supports Preliminary Approval ........ 6
V. CLASS NOTICE ........ 11
VI. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......... 5

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004) .......... 7

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) .......... 4, 6

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......... 5, 6, 10, 11

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553 (W.D. Wash. 2004) .......... 4

*In re Western Union Money Transfer Litig.*, No. CV-01-0335 (CPS), 2004 U.S. Dist. LEXIS 29377, 2004 WL 3709932 (E.D.N.Y. Oct. 18, 2004) .......... 8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .......... 6

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 75 L. Ed. 2d 456, 103 S. Ct. 1219 (1983) .......... 5

*Safeco Inc. Co. of Amer. v. Burr*, -- U.S. --, 127 S. Ct. 2201 (2007) .......... 8

*Tenuto v. Transworld Sys., Inc.*, No. CIV 99-4228, 2001 U.S. Dist. LEXIS 17694, 2001 WL 1347235 (E.D. Pa. Oct. 31, 2001) .......... 4

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .......... 6

*West v. Circle K Stores, Inc.*, No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) .......... 3, 4, 6

## STATUTES

Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681 et seq .......... 1, 6, 7, 10

## RULES

FED. R. CIV. P. 23 ........ passim
FED. R. CIV. P. 23(a) ........ 5, 12
FED. R. CIV. P. 23(b)(3) ........ 2, 5, 12
FED. R. CIV. P. 23(e) ........ 3, 5
FED. R. CIV. P. 23(f) ........ 10
FED. R. CIV. P. 30(b)(6) ........ 2

## TREATISES

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004) ........ 5
MANUAL FOR COMPLEX LITIGATION § 1.46, at 53-55, 57 (West 1981) ........ 4

# I. INTRODUCTION

Plaintiff Pamela Phillips and Defendant Accredited,[1] following significant pretrial discovery and motions, including Plaintiff's motion for class certification, have reached an agreement to settle this action, brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681 et seq. Phillips's claims arise from allegations that Accredited obtained the names and addresses of the class members premised on the representation that Accredited would use that information to make "firm offers of credit" (as that term is defined under the FCRA) to the members of the class, and that Accredited's solicitations fell short of doing so.

During these pretrial proceedings, the parties also took part in protracted arm's-length settlement negotiations. The parties recently reached a settlement in this case. Early attempts to negotiate a settlement were hampered by Accredited's difficult and uncertain financial situation. During earlier stages of the litigation, Accredited had already greatly scaled down its operations and had ceased substantially all of its retail lending business. Accredited was recently purchased and is now a wholly-owned subsidiary of LSF5 Accredited Investments, LLC ("Lone Star"), a subsidiary of Lone Star Fund V L.P. The Lone Star transaction in itself was fraught with uncertainty and spawned separate litigation in the Delaware Court of Chancery. Because of these uncertainties, and as discussed in greater detail below, the settlement is fair, reasonable, and adequate, and preliminary approval should be granted.

# II. BRIEF STATEMENT OF CASE

## A. Nature of the Claims

Pamela Phillips filed this action on August 29, 2005, asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Phillips premises her claims on two solicitations that were received from Defendant

[1] Defendants Accredited Home Lenders Holding Company and Accredited Home Lenders, Inc. d/b/a Home Funds Direct will collectively be referred to as "Accredited."

Accredited. These solicitations were single-page letters (printed on front and back sides of the page) that Accredited sent through a process known as "prescreening." The two mailers pertinent to Phillips's claims will be referred to as the "1001 Mailer" and the "1159 Mailer." Ms. Phillips claims first that these mailers did not constitute firm offers of credit, as defined under the FCRA. Ms. Phillips also claims that the solicitations did not set forth disclosures of certain information required by the FCRA in a "clear and conspicuous" manner.

### B. Procedural History

Plaintiff filed an amended complaint on February 2, 2006. Accredited answered that complaint on February 24, 2006. The parties engaged in comprehensive discovery, initially directed at class certification. On April 13, 2007, Phillips moved for the certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court granted certification on May 15, 2007. Following certification, the parties conducted additional merits discovery, including the depositions of Accredited employees pursuant to Rule 30(b)(6).

## III. THE TERMS OF THE SETTLEMENT

The parties' extensive settlement negotiations, over many months, have recently led to the consummation of a Settlement Agreement (attached to the Declaration of Edward S. Zusman, Esq. In Support of Preliminary Approval of Class Action Settlement (Zusman Decl.) as Exhibit "1"), which is subject to the Court's approval. Pursuant to the settlement agreement, Accredited has agreed to provide the following consideration for class members:

1. Each class member who submits a "Proof of Claim" form, a form of which is being submitted for the Court's review and approval (attached as Exhibit A to the Settlement Agreement), will be entitled to $10.00 per Mailer that he or she received.

2. Accredited will provide notice to the Class by first class mail and will also maintain a web site, which will provide information concerning the settlement, including copies of the chief pleadings in the case, relevant dates, copies of claim forms, and the means for class members to submit claims electronically to the Claims Administrator.

After negotiating the relief for the class, the parties engaged in a separate discussion over several weeks regarding a maximum amount of attorney fees that Accredited would agree to pay, subject to court approval. Accredited agreed that they would not oppose an award of fees in the amount of $260,000. This figure represents approximately 20% of the value of the settlement to class members, and reasonably represents the work performed on the case by Class Counsel, including opposing motions to dismiss, conducting discovery, obtaining class certification, researching issues for cross-summary judgment motions, taking merits discovery, negotiating the settlement, researching, and keeping abreast of Accredited's financial travails, including: monitoring Accredited's litigation with Lone Star, its Edgar Filings, and preparing these papers, in addition to other services that will be necessary to support the Class. Based on all of this Class Counsel asserts that Preliminary Approval of the Settlement, including this amount in fees, is appropriate, subject to proof upon final approval.

## IV. ARGUMENT

### A. Legal Standard

The parties respectfully request preliminary approval of their settlement, as a prerequisite of final approval under Rule 23(e). FED. R. CIV. P. 23(e). There is a strong judicial policy favoring settlement of class actions. *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598, *1 (E.D. Cal. June 13, 2006). Although at final approval, courts will look at *all* the information adduced, including responses from the class, preliminary approval focuses on less fact-

intensive, threshold determinations. At the preliminary approval stage, "[t]he court is really only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . .'" *West*, 2006 WL 1652598, at *1 (quoting *Tenuto v. Transworld Sys., Inc.*, No. CIV 99-4228, 2001 U.S. Dist. LEXIS 17694, 2001 WL 1347235, *1 (E.D. Pa. Oct. 31, 2001)). In conducting this facial analysis of the settlement, one court has described the test as requiring an inquiry into whether the settlement falls in the "range" of possible settlements:

> The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Its purpose is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. . . . If the district court finds that a proposed settlement is "within the range of possible approval," the next step is the fairness hearing. Class members are notified of the proposed settlement and the fairness hearing in which they and all interested parties have an opportunity to be heard. The goal of the [final fairness] hearing is to "adduce all information necessary for the judge to rule intelligently on whether the proposed settlement is 'fair, reasonable, and adequate.'"

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46, at 53-55, 57 (West 1981)).

When parties reach a settlement before class certification has taken place, a court also evaluates the propriety of class certification for settlement purposes. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004).

///

**B. The Class Certification Hurdle Has Already Been Cleared**

As noted above, the Court certified a plaintiff class by order dated May 15, 2007, in which it certified a class of consumers who received the 1001 Mailer and a class of those consumers who received the 1159 Mailer. In so finding, the Court found that the requirements of Rule 23(a) and 23(b)(3) were satisfied. Thus, this part of the threshold for preliminary approval has already been met. Nothing in the proposed settlement changes this determination.

**C. The Settlement Meets The Standards For Preliminary Approval**

**1. The Settlement Is "Fair, Adequate, and Reasonable"**

Although the inquiry on preliminary approval is whether the settlement lies "within the range of possible approval," the test inherently requires some consideration of the standards for final approval. The Ninth Circuit has described the standards for final approval:

> Fed. R. Civ. P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court . . . ." Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the "universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable."

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 75 L. Ed. 2d 456, 103 S. Ct. 1219 (1983)). "Rule 23(e) has been interpreted to require the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004).

///

In undertaking the final fairness analysis, a court may consider "some or all" of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). There is no predetermined formula for weighing these considerations. The strength of a single factor may support a determination of fairness. *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin'l*, 213 F.3d at 458. Consideration of these factors at this initial stage of the approval process supports the granting of preliminary approval.

**2. The Indicia Of Arm's-Length Negotiations and Lack of Obvious Deficiencies Supports Preliminary Approval**

Under the circumstances of this case, Plaintiff submits that the question of "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing" is easily answered in the affirmative. *Gautreaux*, 690 F.2d at 621 n.3. As set forth below, the lighter burden for preliminary approval (relative to final approval) is satisfied. *See West*, 2006 WL 1652598, at *1.

**a. Review Of The Relative Strengths And Weaknesses of the Parties' Claims and Defenses Favors Approval**

Plaintiff's first cause of action, for violation of the FCRA's "permissible purpose" requirement requires her first to prove that Accredited's Mailers do not

constitute "firm offers of credit" under the FCRA. The parties strongly contest this first legal question. Plaintiff contends that numerous cases, chief among them *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), support her "firm offer" claim. Plaintiff takes the position that because Accredited's Mailers failed to include terms of any loan, including such elements as loan amount, length of the loan, interest rate, or method of computing interest, they violate the FCRA as interpreted by *Cole* and its progeny.

Accredited disputes Plaintiff's analysis, and contends that the Seventh Circuit's *Cole* decision is inconsistent with the language of the FCRA. Accredited asserts that determining whether a prescreen solicitation constitutes a firm offer of credit is not limited to the four corners of the solicitation. Rather, the analysis calls for consideration of the circumstances as a whole, including the lender's pre-selection of credit criteria, its purchase of a prescreen list, mailing of the solicitations, and its interactions with a consumer once he or she responds to the solicitation.

Various district courts have been divided on this issue, with many adopting the more expansive reading of the FCRA under *Cole* (which Plaintiff advocates), but many others reading *Cole* and its progeny more narrowly and strictly construing the FCRA. Further, to date the Seventh Circuit is the only Court of Appeals that has had occasion to address the firm offer issue. Therefore, there appears to be authority both for and against the parties' respective positions.

Accredited faces additional risks, however. Even if it was able to prevail on a firm offer finding, there would still remain Plaintiff's second cause of action – the "clear and conspicuous" claim.

However, whether proceeding on the firm offer claim or on the clear and conspicuous claim, Plaintiff would have to clear the additional hurdle of proving a willful violation of the FCRA. This area, too, is in a state of flux. The Ninth Circuit recently adopted a standard of willfulness that included recklessness. The

U.S. Supreme Court granted certiorari and recently affirmed the Ninth Circuit's conclusion that recklessness can satisfy willfulness. *Safeco Inc. Co. of Amer. v. Burr*, -- U.S. --, 127 S. Ct. 2201, 2216 (2007). However, the Court left unresolved the question of what a defendant may do to rebut a finding of willfulness. For example, the Court noted that advice of counsel could be proffered in defending against willfulness. It remains an open question as to what evidence and legal standards are to be employed in making that determination. This uncertainty militates in favor of settlement.

**b. The Settlement Is Within the Range of Possible Approvals In Light of the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

In light of the size of the class in this case (collectively over 129,000 members), and given the fact that practically speaking this litigation is the only means by which these individuals will achieve any recovery, Plaintiff is motivated to pursue this litigation to judgment. Conversely, considering the potential statutory damages at stake, Accredited would face liability of over $129 million. Naturally, Accredited would be highly motivated to avoid that result, and would likely seek appellate review, in the event that such a judgment was entered. *See In re Western Union Money Transfer Litig.*, No. CV-01-0335 (CPS), 2004 U.S. Dist. LEXIS 29377, 2004 WL 3709932, *6 (E.D.N.Y. Oct. 18, 2004).

In light of the uncertainties in the law described above, Plaintiff faces the risk that she will recover nothing. Moreover, she faces the additional risk that any victory at trial will be a pyrrhic one. Accredited encountered substantial financial difficulties early in the course of this litigation. During the early stage of this case, Accredited was on the brink of insolvency. This financial condition thwarted the parties' early efforts at resolving this case. (Zusman Decl., ¶ 4.c.) Later, Accredited negotiated a deal, the result of which was that Accredited was purchased by Lone Star. (*Id.*) The proposed deal offered a degree of liquidity, but that

amount was speculative and contingent on the consummation of the deal. That process was in itself an uncertain venture, and one that spawned separate litigation. Only recently was that lawsuit resolved and the transaction completed. However, even with a potential source of settlement funds, Plaintiff would likely face hurdles concerning successor liability to enforce any judgment. (*Id.*)

**c. The Amount Offered In Settlement Is Fair and Reasonable**

Under the Settlement, each Class Member who completes and submits a claim form in the specified time frame will receive a cash payment of $10 for each solicitation. Although a Class Member individually might be able to obtain statutory damages in the range of $100 to $1,000, he or she would only be able to do so at great expense. An individual litigant's expenses would quickly exceed the $1,000 maximum recovery for willful violations. (Zusman Decl., ¶¶ 4.b.-c.) In addition, the potential defenses to recovery set forth above pose a barrier to recovery and an individual litigant could receive no relief.

Also, full damages on a class basis would not be possible in this case. As set forth above, maximum statutory damages on a class basis would be over $129 million, which far exceeds Accredited's liquid assets, and at times approached Accredited's market capitalization. Accredited may not be able to pay a judgment in this case.

**d. The Significant Amount of Discovery Completed and the Advanced Stage of Proceedings Favors Preliminary Approval**

Also as indicated above, the parties have engaged in substantial discovery. Prior to reaching the Settlement, the parties had conducted written discovery and exchanged documents. Plaintiff also conducted depositions of certain Accredited officers pursuant to Rule 30(b)(6). These facts support preliminary approval,

particularly considering that "'formal discovery is not a necessary ticket to the bargaining table' . . . ." *In re Mego Fin'l Corp.*, 213 F.3d at 459.

The parties also litigated the issue of class certification, and following the Court's order granting certification, Accredited petitioned for interlocutory appeal pursuant to Rule 23(f), which was denied. Just prior to entering the Settlement, the parties were working to complete any remaining discovery, including expert discovery. Also, the parties had begun preliminary discussions regarding dispositive motions, and but for entering the Settlement would have prepared for the filing of cross motions for summary judgment and/or partial summary judgment to resolve the purely legal issues in the case, which as mentioned above involve a degree of uncertainty. (Zusman Decl., ¶ 4.a.)

**e. Experience and Views of Counsel**

As the Court found in its Order granting class certification, Class Counsel is experienced and qualified. Class Counsel has substantial experience in complex litigation. They have litigated in the consumer protection area, including several FCRA cases.

Defense counsel is also well-qualified and knowledgeable. They have substantial experience in the defense of class action litigation, including the areas of consumer and fraud claims.

Class Counsel and defense counsel believe that the Settlement represents a fair, reasonable, and adequate resolution under the circumstances. Counsel believes that the cash payment available to Class Members provides reasonable compensation for the particular privacy goals of the FCRA. Class and defense counsel do not believe that any members of the class have suffered actual damages, and those who have will have the opportunity to opt out of the Settlement. (Zusman Decl., ¶ 4.c.) Counsel believes that preliminary approval is appropriate.

///

**f. There Has Been No Collusion Between The Parties**

Lastly, there is no indication of collusion between the parties. (Zusman Decl., ¶ 3.) The parties have actively litigated this case, and have had adversarial, arms-length dealings throughout the course of the action. (*Id.*) The procedural history set forth above confirms the parties' adversarial dealings and disagreement on important issues, such as class certification. The fact that the parties dealt with one another on equal terms also favors preliminary approval. *See In re Mego Fin'l Corp.*, 213 F.3d at 459-60 (affirming finding of lack of collusion where evidence showed parties negotiated on equal footing).

## V. CLASS NOTICE

The parties have met and conferred, and have agreed to a proposed form of Notice to be sent to the Class Members. A form of that Notice is attached as Exhibit B to the Settlement Agreement. Under the Settlement, Accredited will obtain the names and addresses of the Class Members from its records pertaining to the 1001 and 1159 Mailers, and update those records using the National Change of Address database. Accredited will mail Notice to the Class Members after the Court approves the form to be provided.

The parties believe the proposed form of Notice adequately informs the Class of the terms of the Settlement and their rights under that agreement. The Notice explains who is in the Class, describes the class claims, and identifies the benefits to be provided under the Settlement. The proposed Notice also details each Class Member's options: to remain in the class and submit a claim form, to object to the Settlement, or to opt out; and provides simple-to-read instructions on how to exercise each of those options.

Further, the proposed Notice explains that each Class Member, should he or she choose to remain a member of the class, will be agreeing to a final release of all claims against Accredited. The Notice is drafted in plain language, and uses tables

and headings to emphasize the most salient points of the notice. Counsel therefore believes that the proposed form of notice adequately apprizes Class Members of their rights under the Settlement.

## VI. CONCLUSION

As set forth above, all requirements for preliminary approval are met. First, certification has already been granted. The circumstances under which the Court found certification under Rules 23(a) and 23(b)(3) proper are unchanged, whether by the Settlement or in any other respect. The history of this lawsuit shows that the parties have been actively litigating this case as adversaries, and up until reaching the Settlement, dealt with one another on equal terms. The terms of the Settlement were established through arms-length negotiations, and are fair, adequate, and reasonable. Therefore, Phillips respectfully requests that the Court grant preliminary approval.

Dated: January 30, 2008

/s/ Kevin K. Eng
David S. Markun
Edward S. Zusman
Kevin K. Eng
MARKUN ZUSMAN & COMPTON LLP

Attorneys for Plaintiff Pamela Phillips